J-S41040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC A. CHAMBERS | : | |
| | : | |
| Appellant | : | No. 720 MDA 2022 |

Appeal from the PCRA Order Entered January 27, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000392-2012

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JANUARY 09, 2023**

Appellant, Eric A. Chambers, appeals ***pro se*** from the January 27, 2022

order dismissing his petition filed pursuant to the Post Conviction Relief Act

("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

A prior panel of this Court summarized the relevant facts of this case as

follows:

> On September 9, 2011, Jalil Walters ("Jalil") and his
> two brothers, Ibrahiim Muhammad ("Ibrahiim") and
> Lewin Chism, Jr. ("Lewin"), were drinking at their
> grandmother's house with family members and their
> friend, Mike Burgress ("Mike").  Lewin was admittedly
> intoxicated, having consumed three beers and several
> shots of liquor.  Jalil had also consumed several shots
> and a beer.  The group decided to continue drinking
> at the Jazzland Bar, located on Walnut Street in
> Harrisburg.

---

[*] Former Justice specially assigned to the Superior Court.

Upon arrival, at approximately 11:00 p.m., Lewin began to feel anxious and uncomfortable; he told his brothers that he wanted to leave as he thought other people in the bar were thugs and gangsters. Lewin left the bar, which prompted Jalil, Ibrahiim, and Mike to follow in an effort to calm him down.

Appellant and Demond Bates, who was security at the bar, followed them outside. Appellant approached Lewin and asked him what he had been saying about the clientele in the bar. Appellant then took a gun out of his pants and pointed it in Lewin's face. The brothers asked Bates to interject, which he refused to do. Appellant then secreted the gun on his person and went back inside the bar.

A short time later, appellant exited the bar again, and this time he was "even more aggressive." Appellant stated he was going to kill one of them. Appellant, who was "irate and angry," pointed the gun at Ibrahiim's chest. The brothers claimed appellant pulled the trigger and at that split second, Jalil jumped in front of the gun taking the bullet that was fired. All of the brothers identified appellant as the shooter in a photographic lineup and in the courtroom. All of the brothers also stated that the gun used was a revolver.

After Jalil was shot, the group flagged down a police vehicle, which then called for an ambulance. Jalil was hospitalized for six to eight days and underwent two surgeries. The bullet had traveled through his left elbow, which it shattered, and his abdomen. The bullet is to remain in his abdomen indefinitely, as the doctors were afraid his internal organs might rupture if they removed it.

Mike, however, claimed that the shooting occurred right after the group exited the bar, and that the bouncer was most likely the shooter. Mike was standing approximately five feet from the shooter who he described as heavy set with hair on his head and a beard, not a goatee. Mike testified he was "unsure" if any of the individuals present at trial was the shooter, including appellant, who was bald with a goatee; he

averred he did not see the shooter in the courtroom. Lewin, Ibrahiim, Jalil, and Mike were also unable to give consistent descriptions of the shooter or what he was wearing. Demond Bates, who worked as a bouncer on the night in question, was familiar with appellant but did not see him in the area at any point.

*Commonwealth v. Chambers*, 113 A.3d 359 (Pa.Super. 2014) (unpublished memorandum at *1) (citations to notes of testimony and footnote omitted), *appeal denied*, 116 A.3d 602 (Pa. 2015).

The relevant procedural history of this case was summarized by a prior panel of this Court as follows:

On May 16, 2013, a jury found Appellant guilty of attempted murder, aggravated assault, persons not to possess a firearm, firearms not to be carried without a license, simple assault, and recklessly endangering another person. On July 17, 2013, the trial court sentenced Appellant to an aggregate term of 25 to 50 years of incarceration and assessed a $ 4,000.26 fine. Appellant filed a timely appeal.

On November 25, 2014, this Court affirmed Appellant's convictions, but vacated the portion of the judgment of sentence in which the trial court assessed the $ 4,000.26 fine. On June 2, 2015, the Supreme Court of Pennsylvania denied Appellant's petition for allowance of appeal.

On July 24, 2015, Appellant filed the underlying ***pro se*** PCRA petition, his first. On April 22, 2016, the PCRA court appointed counsel. On March 20, 2017, Appellant, although represented by counsel, filed a ***pro se*** "motion to withdraw counsel," in which he sought the removal of PCRA Counsel because Appellant and PCRA Counsel had "yet to come to a mutual understanding of what [Appellant]'s arguments/claims to be raised are[,]" and requested to proceed with PCRA proceedings representing himself. Motion to Withdraw Counsel, 3/20/17, ¶ 3.

In response, on April 17, 2017, PCRA Counsel filed a petition for leave to withdraw as counsel in which he likewise sought removal from Appellant's case based on Appellant's withdrawal motion and "fundamental issues [that] have made representation unreasonably difficult." Petition for Leave to Withdraw as Counsel, 4/17/17, ¶ 4. On October 20, 2017, the court granted PCRA Counsel's petition to withdraw. There is no indication in the record that the court held a **Grazier**[1] hearing.

On July 19, 2018, the PCRA court held a hearing on Appellant's PCRA petition during which Appellant represented himself. On September 20, 2018, the PCRA court dismissed Appellant's PCRA petition.

**Commonwealth v. Chambers**, 216 A.3d 380 (Pa.Super. 2019) (unpublished memorandum at *1) (some citations omitted; footnote added).

On April 12, 2019, a panel of this court vacated the PCRA court's September 20, 2018 order denying Appellant's first PCRA petition and remanded this matter for a **Grazier** hearing. **See id.** Following a **Grazier** hearing, the PCRA court determined that Appellant did not knowingly and voluntarily waive his right to counsel and appointed Kaitlyn Clarkson, Esq. ("Attorney Clarkson") to represent him.

On April 24, 2020, [Attorney Clarkson] filed a Supplemental Petition for PCRA relief. In this Supplemental Petition, Attorney Clarkson only identified one issue of merit, namely the calculation of [Appellant's] credit for time served. As to the remaining issues, Attorney Clarkson sent [Appellant] a letter certifying that they lacked merit in accordance with the requirements of [**Commonwealth v. Turner**], 544 A.2d 927 (Pa. 1988) and

---

[1] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

- 4 -

> [***Commonwealth v. Finley***], 550 A.2d 213 (Pa. 1988) (***en banc***). This ***Turner/Finley*** letter was attached to the April 24, 2020 Supplemental Petition.
>
> Thereafter, on May 21, 2020, [Appellant] filed a Motion to Proceed ***pro se*** and be permitted to file a Supplemental PCRA. We scheduled another ***Grazier*** Hearing for July 9, 2020. Following that hearing, we permitted Attorney Clarkson to withdraw as counsel and [Appellant] to proceed ***pro se***. [Appellant] was given sixty (60) days to file a Supplemental Petition for PCRA Relief. Following several requests for extensions, [Appellant] filed his Amended PCRA Petition on March 1, 2021. Also following several requests for extensions, the Commonwealth filed its response on September 30, 2021.

PCRA court opinion, 12/20/21 at 3 (citation formatting corrected).

On December 20, 2021, the PCRA court provided Appellant with notice of its intention to dismiss his petition without a hearing, pursuant to Pa.R.Crim.P. 907(1). The PCRA court also filed an opinion that same day addressing each of Appellant's claims. Appellant did not respond to the PCRA court's Rule 907 notice. Thereafter, on January 27, 2022, the PCRA court entered an order dismissing Appellant's PCRA petition and all the amendments thereto. This appeal followed.[2]

Appellant raises the following 11 issues for our review:

1. Whether the PCRA court committed reversible error, where it abused its discretion and showed judicial bias in its memorandum opinion denying

---

[2] The record reflects that Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant's PCRA petition, absent a written finding of facts and conclusion of law?

2. Whether the PCRA court committed reversible error and abused its discretion, in conducting an evidentiary hearing for 3 claims of ineffective assistance of trial counsel (IAC), without trial counsel's presence (to explain his actions/inactions)?

3. Whether PCRA court committed reversible error in finding no merit and denying Appellant's claim of trial counsel's ineffectiveness in failing to motion for the suppression of Jalil Walters' identification, which was obtained from Detective Ryan Neal's suggestive and tainted identification process?

4. Whether the PCRA court committed reversible error, in violating Appellant's due process protections of the Fourteenth amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution, when the PCRA court denied that all post-conviction counsel were ineffective, for failing to fulfill their duties, to review the entire record, for issues of merit?

5. Whether the PCRA court committed reversible error and upheld the violation of Appellant's due process rights, in the prosecution, conviction, and sentence for Ibrahiim Muhammad, that shocked one's sense of justice, when Muhammad was never a complainant, victim, nor the subject of Appellant's trial?

6. Whether the PCRA court committed reversible error, in denying Appellant relief when all counsel were ineffective for failing to raise the due process, procedural and constitutional violations, for Ibrahiim Muhammad being named as a victim or complainant of any offenses, after trial ended, during jury instructions?

7. Whether the PCRA court was in error, in failing to find trial counsel ineffective, when trial counsel failed to have ballistic testing done on the available exculpatory and tangible evidence of the bullet fragments and clothing (for GSR), that was removed from victim Walters, that would have proven his client's innocence, and in turn, prove that all post-conviction counsel were ineffective for failing to raise (IAC) of trial counsel?

8. Whether the PCRA court erred, abused its discretion, and lowered the Commonwealth's burden of proof, in failing to find all prior counsel ineffective, for failing to raise the erroneous jury instruction for attempted murder, that omitted the element of malice?

9. Whether the PCRA court's upholding of the illegal maximum sentence of 40 years['] incarceration at count 1, was in error and in conflict with the sentencing code, when the trial court assessed Walters' injury at count 2, to Muhammad's non- injury at count 1?

10. Whether the PCRA court's upholding of the illegal sentence of 9-18 years['] incarceration at count 2; 18 [Pa.C.S.A. §] 2702(a)(4), was in error, exceeded the statutory maximum and conflicts with the sentencing code for a second-degree felony?

11. Whether the trial court accepted the jury's erroneous guilty verdicts of guilty, on the firearm offenses (counts 3 and 6) when the Commonwealth failed to prove all of the essential elements of the uniform firearms act, and whether the [PCRA] court erred, abused its discretion, and committed reversible error in denying that all prior counsel were ineffective for failing to raise the omittance of the missing essential elements of the Commonwealth's prosecution of their client?

- 7 -

Appellant's brief at 5-7.[3]

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." **Commonwealth v. Patterson**, 143 A.3d 394, 397 (Pa.Super. 2016) (citation omitted). In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). These issues must be neither previously litigated nor waived. 42 Pa.C.S.A. § 9543(a)(3).

Preliminarily, we observe that a number of Appellant's claims involve allegations of trial court error that could have been raised on direct appeal. To the extent Appellant failed to do so, we conclude that Appellant has waived these claims under the PCRA. **See** 42 Pa.C.S.A. § 9544(b) (stating, "an issue is waived if the petitioner could have raised it but failed to do so before trial,

---

[3] For the ease of discussion, we have elected to address Appellant's claims in a different order than presented in his appellate brief.

at trial, … on appeal or in a prior state postconviction proceeding."); *see also*

***Commonwealth v. Cousar***, 154 A.3d 287, 296 (Pa. 2017).

Additionally, to the extent Appellant challenges to the trial court's jury instructions and the sufficiency and weight of the evidence – issues 5, 8 and 11 – we note that these claims have been previously litigated on direct appeal and found to be without merit by this Court. ***See Commonwealth v. Chambers***, 113 A.3d 359 (Pa.Super. 2014) (unpublished memorandum at *3-6), ***appeal denied***, 116 A.3d 602 (Pa. 2015). Accordingly, these claims are not cognizable under the PCRA. ***See*** 42 Pa.C.S.A. § 9543(a)(3) (stating, "[t]o be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence … [t]hat the allegation of error has not been previously litigated[.]"). A specific issue has been previously litigated if "it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." ***Id.*** at § 9544(a)(3).

Appellant next argues that the PCRA court demonstrated judicial bias in its December 20, 2021 opinion by "relying solely on the Commonwealth's and [Attorney] Clarkson's perspectives [and] failing to prove any specific facts to reach its conclusion[.]" Appellant's brief at 15-16 (issue 1). This claim is baseless.

Our Supreme Court has stated the following with respect to a claim of judicial bias:

> Under our PCRA statute, relief may be due where a conviction or sentence results from "a violation of the

Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.[A.] § 9543(a)(2)(i). The Fourteenth Amendment guarantees that no state "shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. XIV, Sec. 1. Due process concerns extend to the actions of the judiciary; accordingly, litigants are guaranteed an absence of actual bias on the part of any judge adjudicating their case. The concept of bias encompasses matters in which an adjudicator has a direct, personal, substantial, [or] pecuniary interest in the outcome of the matter. While a fair trial is indeed a basic requirement of due process, most matters relating to judicial disqualification [do] not rise to a constitutional level. In order to determine whether a judge harbors an unconstitutional level of bias, the inquiry is an objective one wherein the requisite question is whether the average judge ... is likely to be neutral, or whether there is an unconstitutional potential for bias. The Supreme Court has determined that there is an impermissible risk of actual bias when a judge has had significant, personal involvement ... in a critical decision regarding [the litigant's] case.

*Commonwealth v. Fears*, 250 A.3d 1180, 1193-1194 (Pa. 2021) (internal quotation marks and case citation omitted; some brackets in original), *cert. denied*, ___ A.3d ___, 142 S. Ct. 1235 (2022).

Here, even a cursory review of Judge Andrew Dowling's December 20. 2021 written opinion reveals that it did not contain any bias, and certainly none that reached the levels of constitutional interference. Accordingly, Appellant's claim to the contrary is entirely unfounded.

- 10 -

Appellant's remaining claims allege the ineffectiveness of both his trial and PCRA counsel. *See* Appellant's brief at 19-31, 37-53 (issues 3-4 and 6-8).

To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must establish the following three factors: "first[,] the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced." *Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa.Super. 2014) (citation omitted), *appeal denied*, 104 A.3d 523 (Pa. 2014).

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (internal quotation marks omitted; some brackets in original), citing 42 Pa.C.S.A. § 9543(a)(2)(ii).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011) (citation omitted), *appeal denied*, 30 A.3d 487 (Pa. 2011).

Our Supreme Court has set forth the proper framework for alleging a layered ineffective assistance of counsel claim in the context of the PCRA:

Succinctly stated, a petitioner must plead in his PCRA petition that his prior counsel, whose alleged ineffectiveness is at issue, was ineffective for failing to raise the claim that the counsel who preceded him was ineffective in taking or omitting some action. In addition, a petitioner must present argument, in briefs or other court memoranda, on the three prongs of the [ineffectiveness] test as to each relevant layer of representation. . . . [T]his means that the arguable merit prong of the [ineffectiveness] test as to the claim that appellate counsel was ineffective in not raising trial counsel's ineffectiveness consists of the application of the three-prong [ineffectiveness] test to the underlying claim of trial counsel's ineffectiveness. If any one of the prongs as to trial counsel's ineffectiveness is not established, then necessarily the claim of appellate counsel's ineffectiveness fails. Only if all three prongs as to the claim of trial counsel's ineffectiveness are established, do prongs 2 and 3 of the [ineffectiveness] test as to the claim of appellate counsel's ineffectiveness have relevance, requiring a determination as to whether appellate counsel had a reasonable basis for his course of conduct in failing to raise a meritorious claim of trial counsel's ineffectiveness (prong 2) and whether petitioner was prejudiced by appellate counsel's course of conduct in not raising the meritorious claim of trial counsel's ineffectiveness (prong 3).

**Commonwealth v. Reid**, 99 A.3d 470, 482 (Pa. 2014) (citation omitted).

Instantly, our review of Appellant's oft-disjointed, 70-page **pro se** brief indicates that he has failed to properly raise his layered ineffectiveness claims by applying the three-prong ineffectiveness test to each level of representation. A determination that trial counsel rendered ineffective assistance is a prerequisite to finding that any subsequent counsel was himself ineffective, and no such findings were demonstrated in this case. **See Commonwealth v. Burkett**, 5 A.3d 1260, 1270 (Pa.Super. 2010).

Accordingly, we could find Appellant's ineffectiveness claims waived on this basis alone. *See Commonwealth v. Brown*, 161 A.3d 960, 969 (Pa.Super. 2017), *appeal denied*, 176 A.3d 850 (Pa. 2017).

In reaching this decision, we note that Appellant's status as a *pro se* litigant does not absolve him from responsibility for compliance with the rules.

> Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must . . . assume that his lack of expertise and legal training will be his undoing.

*Commonwealth v. Adams*, 882 A.2d 496, 498 (Pa.Super. 2005) (citation omitted).

In any event, even if we were to reach the merits of Appellant's claims, we would find they warrant no relief, and adopt the December 20, 2021 opinion of the PCRA court as our own, which in turn relies, in part, on the analysis set forth in Attorney Clarkson's well-reasoned *Turner/Finley* letter attached to Appellant's April 24, 2020 supplemental PCRA petition.

Based on the foregoing, we affirm the January 27, 2022 order of the PCRA court dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/09/2023





COMMONWEALTH OF PENNSYLVANIA,    : IN THE COURT OF COMMON PLEAS,

                                : DAUPHIN COUNTY, PENNSYLVANIA

          v.                     :

                                :

                                : CRIMINAL – PCRA

ERIC CHAMBERS,                   :

                Defendant      : NO. 392-CR-2012

## Pa.R.A.P. 1925(a) OPINION

**AND NOW**, this __31st__ day of ___May___, 2022, in accordance with Pennsylvania Rule of Appellate Procedure 1925(a)(1), this Court finds the issues raised by Appellant, Eric Chambers, in his Statement of Matters Complained of on Appeal of our December 20, 2021 and January 27, 2022 Orders are adequately addressed in the Memorandum Opinion filed on December 20, 2021, and no additional opinion will be filed.

BY THE COURT:

_____
Andrew H. Dowling, J.

Distribution: 6/1/22 @ 8:30 am
The Hon. Andrew H. Dowling Io
Dauphin County District Attorney's Office Io
Smart Communications/PADOC, Eric Chambers/#LC6450, SCI at Houtzdale, P.O. Box
     33028, St. Petersburg, FL 33733 mail



51-1



COMMONWEALTH OF PENNSYLVANIA,  : IN THE COURT OF COMMON PLEAS,
                                                            : DAUPHIN COUNTY, PENNSYLVANIA
       v.                                        :
                                                            :
                                                            : CRIMINAL – PCRA
ERIC CHAMBERS,                                 :
                Defendant          : NO. 392-CR-2012

## MEMORANDUM OPINION

Presently pending before this Court is Defendant/Petitioner's *pro se* Amended Petition for Post-Conviction Relief. The background of this case is as follows: On September 9, 2011, Lewin Chism, Ibrahim Muhammad, Jalil Walters and Mike Burgess were drinking alcohol at their grandmother's residence. They then went to the Jazzland Bar in Harrisburg to continue to drink alcohol. At some point, Mr. Chism left the bar and Mr. Muhammad, Mr. Walters and Mr. Burgess followed him out of the bar. At that time, Petitioner, Eric Chambers, also exited the bar and, following a verbal altercation, pointed a firearm at Mr. Chism. Petitioner then put the firearm away and re-entered the Jazzland bar.

As the four men were walking away from the bar, Petitioner came out of the bar a second time and pointed a firearm at Mr. Muhammad. Petitioner pulled the trigger to the firearm, and Mr. Walters jumped in front of Mr. Muhammad and was struck by a bullet.

Following a trial, on May 16, 2013, Petitioner was found guilty of Criminal Attempt Homicide, Aggravated Assault, Persons Not to Possess a Firearm, Carrying a Firearm Without a License, Simple Assault by Physical Menace, and Recklessly Endangering Another Person. On July 17, 2013, Petitioner was sentenced as follows:

1. Count 1 – Criminal Attempt Homicide – 20-40 years at a State Correctional Institution
2. Count 2 – Aggravated Assault – 9-18 years at a State Correctional Institution



1

46-7

3. Count 3 – Person Not to Possess Firearm – 5-10 years at a State Correctional Institution, concurrent with Count 1
4. Count 4 – Carrying a Firearm Without a License – 3-6 years at a State Correctional Institution, consecutive with Count 1 .
5. Count 5 – Simple Assault by Physical Menace – 1-2 years at a State Correctional Institution, concurrent with Count 1
6. Count 6 – Recklessly Endangering Another Person – 1-2 years at a State Correctional Institution, concurrent with Count 1.

Petitioner filed a *pro se* PCRA on July 24, 2015, and we appointed Damian DeStefano, Esquire to represent him. Petitioner was unhappy with Attorney DeStefano's representation, and Attorney DeStefano ultimately filed a Petition to Withdraw as Counsel, averring that fundamental disagreements had arisen between Petitioner and Attorney DeStefano regarding the issues that Petitioner wanted to raise and the merits of those issues. We granted Attorney DeStefano's Petition to Withdraw by Order dated October 20, 2017 and granted Defendant thirty days to file a supplemental PCRA that raises all issues that he would like the Court to consider. The Commonwealth was then granted forty-five days to file a response.

Petitioner ultimately filed a supplemental PCRA, and the Commonwealth filed a response to same. Upon review of Petitioner's PCRA and the Commonwealth's response, we determined that Petitioner only raised three issues that had arguable merit, and dismissed Petitioner's remaining issues for the reasons set forth in the Commonwealth's response. We held a Hearing on July 19, 2018 that was limited to those three issues, all of which claimed ineffective assistance of counsel. We later entered an Order on September 20, 2018, wherein we denied the supplemental PCRA.

Petitioner appealed our September 20, 2018 Order to the Superior Court. The Superior Court ultimately vacated our September 20, 2018 Order and remanded the case back to this Court for a hearing pursuant to <u>Com. v. Grazier,</u> 713 A.2d 81 (Pa. 1998). We held a <u>Grazier</u>

Hearing and, upon a determination that Petitioner did not knowingly, voluntarily and intelligently waive his right to PCRA counsel, we appointed the McShane Law Firm to represent Petitioner.

On April 24, 2020, Kaitlyn Clarkson, Esquire from the McShane Law Firm filed a Supplemental Petition for PCRA relief. In this Supplemental Petition, Attorney Clarkson only identified one issue of merit, namely the calculation of Petitioner's credit for time served. As to the remaining issues, Attorney Clarkson sent Petitioner a letter certifying that they lacked merit in accordance with the requirements of Com. v. Turner, 544 A.2d 927 (Pa. 1988) and Com. v. Finley, 550 A.2d 213 (Pa. 1988) (*en banc*). This Turner/Finley letter was attached to the April 24, 2020 Supplemental Petition.

Thereafter, on May 21, 2020, Petitioner filed a Motion to Proceed *pro se* and be permitted to file a Supplemental PCRA. We scheduled another Grazier Hearing for July 9, 2020. Following that Hearing, we permitted Attorney Clarkson to withdraw as counsel and Petitioner to proceed *pro se*. Petitioner was given sixty (60) days to file a Supplemental Petition for PCRA Relief. Following several requests for extensions, Petitioner filed his Amended PCRA Petition on March 1, 2021. Also following several requests for extensions, the Commonwealth filed its response on September 30, 2021.

In his Supplemental PCRA, Petitioner has made several claims of ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing the following: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness. Commonwealth v. Pierce, 515 Pa. 153, 158-59, 527 A.2d 973, 975-76 (1987). "A petitioner establishes prejudice when he demonstrates 'that there is a reasonable probability that, but for

3

counsel's unprofessional errors, the result of the proceeding would have been different.'" Com. v. Johnson, 600 Pa. 329, 345–46, 966 A.2d 523, 532–33 (2009) (internal citations omitted).

Petitioner's first claim is that Trial Counsel was ineffective in failing to object, failing to file a motion to suppress and failing to raise issues concerning Jalil Walters' identification. Petitioner claims that this identification was a result of a suggestive identification process. We find that this claim has no arguable merit for the reasons set forth in the Commonwealth's response as well as Attorney Clarkson's Turner/Finley letter. As such, we hereby incorporate as if fully set forth herein pages 2-4 of the Commonwealth's response and pages 19-22 of Attorney Clarkson's Turner/Finley letter.

Petitioner's second claim is that all prior counsel were constitutionally ineffective when they failed to object at trial and failed to properly raise and argue on appeal that the trial court lacked subject matter jurisdiction to prosecute and sentence Petitioner for the attempted murder of Ibrahim Muhammad. We find that this issue does not have arguable merit for the reasons set forth on page 4 of the Commonwealth's response and pages 10-12 of Attorney Clarkson's Turner/Finley letter, and we incorporate them both herein.

In his third claim, Petitioner asserts that his all of his prior counsel were ineffective when they failed to have the existing available, tangible evidence of the bullet fragments ballistically tested and scrutinized by a forensic technician to determine the caliber of the firearm used. Petitioner claims that this would have established his innocence but does not provide any support for this claim. This issue also has no arguable merit as Petitioner has not provided any support for his claim that the caliber of the weapon used could have been determined from the bullet fragments. We further incorporate as if fully set forth herein pages 4-5 of the Commonwealth's response and pages 7-8 of Attorney Clarkson's Turner/Finley letter.

4

Petitioner's fourth claim is that all prior counsel were ineffective when they ignored tangible, available and admissible evidence of Jalil Walters' clothing. Petitioner alleges, without support, that this would have established his innocence. Again, this claim does not have arguable merit as Petitioner provides no support for what he assumes would have been found on the clothing or how this would have affected his trial. His argument consists of pure speculation, which is insufficient to state a meritorious claim for post-conviction relief. We also incorporate as if fully set forth herein page 5 of the Commonwealth's response and page 9 of Attorney Clarkson's Turner/Finley letter.

In his fifth claim, Petitioner asserts that all prior counsel were ineffective in failing to object to the jury instruction on the attempted murder of Ibrahim Muhammad. Petitioner claims that this instruction was illegal and unconstitutional for several reasons. However, this issue was previously litigated and found by the Pennsylvania Superior Court to be meritless. Petitioner cannot obtain post-conviction relief based on previously litigated claims. See Com. v. Santiago, 579 Pa. 46, 73, 855 A.2d 682, 698 (2004) ("Appellant cannot attempt to resurrect this claim 'by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims.'") (citations omitted).

Petitioner's sixth claim is that all prior counsel were ineffective when they failed to assert that the evidence was insufficient to support the conviction for attempted murder. This claim was also previously litigated on direct appeal and thus cannot now be a basis for post-conviction relief.

The seventh claim is that Petitioner's sentence exceeds the statutory maximum, and all prior counsel were ineffective for failing to address this issue during sentencing or post-conviction proceedings. We find that this issue is meritless for the reasons stated in the

5

Commonwealth's response and Attorney Clarkson's <u>Turner/Finley</u> letter. To that end, we hereby incorporate as if fully set forth herein pages 6-7 of the Commonwealth's response and pages 25-28 of Attorney Clarkson's <u>Turner/Finley</u> letter.

Petitioner's eighth and final allegation is that he received an illegal sentence on the charge of Aggravated Assault. This issue is also meritless for the reasons set forth in pages 7-8 of the Commonwealth's response and pages 28-29 of Attorney Clarkson's <u>Turner/Finley</u> letter, and we hereby incorporate those pages herein.

For the foregoing reasons, we enter the following Order:

6

COMMONWEALTH OF PENNSYLVANIA,    : IN THE COURT OF COMMON PLEAS,
                                 : DAUPHIN COUNTY, PENNSYLVANIA
            v.                   :
                                 :
                                 :
                                 : CRIMINAL – PCRA
ERIC CHAMBERS,                   :
                Defendant        : NO. 392-CR-2012

## ORDER

AND NOW, this 20th day of December 2021, upon consideration of

Petitioner Eric Chambers' PCRA Petition and the Commonwealth's response thereto, for

the reasons set forth in the attached Memorandum Opinion, it is hereby ORDERED that

the Court intends to dismiss the Petition without an evidentiary hearing.

**The Petitioner is hereby given notice of this Court's intent to dismiss**

**his PCRA Petition and has twenty (20) days from the date of this Order to file a**

**Response to this Notice of Intent to Dismiss**

BY THE COURT:

_____
Andrew H. Dowling, J.

Distribution: 12-20-21 @ 11:53 AM
The Hon. Andrew H. Dowling ID
Mari L. Hambright, Deputy District Attorney ID
Smart Communications/PADOC, Eric Chambers/#LC6450, SCI at Houtzdale, P.O. Box
    33028, St. Petersburg, FL 33733 mail